While engaged in the scope and course of his employment with defendant, Louisiana Central Lumber Company, on February 17, 1939, plaintiff, Burl B. Cunningham, sustained a right inguinal hernia, it resulting from a strain caused by a falling log that he was attempting to lift.
At the suggestion and expense of his employer, he underwent a hernia operation on February 28, 1939; and from the time of the injury until May 9, 1939, appropriate compensation was paid him.
On the last mentioned date he returned to work and performed the manual tasks required of him at his employer's mill until January 18, 1940, when he ceased that employment and commenced the operation of a boarding house belonging to defendant. This venture, in connection with which he performed the cooking and also waited on tables, continued until about June 1, 1940.
Meanwhile, on May 7, 1940, plaintiff brought this suit praying that the Louisiana Central Lumber Company be condemned to pay him compensation as for total and permanent disability, less credit for the payments previously made. He alleges the occurrence of the mentioned accident and that a disabling right inguinal hernia resulted therefrom; that the hernia operation was performed on February 28, 1939; and that he received compensation from the date of his injury to May 9, 1939.
Further it is alleged that "on or about May 9, 1939, although suffering considerable pain and discomfort, he went back to work at a different type of employment which did not require as frequent and heavy lifting; that he continued to suffer pain and a stinging sensation at the seat of the hernia and the operation therefor which increased in severity until January 18, 1940, when he was forced to quit work because of the pain and discomfort he suffered."
Also, plaintiff shows that he is and has been since January 18, 1940, permanently and totally disabled to perform work of a reasonable character.
Defendant, in its answer to the original petition, admits the occasioning of the hernia; that an operation therefor was furnished; and that compensation was paid until the employee returned to work. It avers that the operation successfully corrected the disabling condition and that plaintiff worked regularly at his usual wages from May 9, 1939, until he quit of his own accord on January 18, 1940.
On these issues the case went to trial.
When the first medical expert offered by plaintiff was interrogated by the latter's counsel concerning the hernia's surgical treatment, he replied that the operation was well done. Then he was asked: "In spite of that how do you account for his complaints of pain in the region you have described?" The response was: "Some of the pain is due to the varicocele and some to the possible impingement of nerve fibers or to the development of neuroma. Of the latter two conditions you couldn't distinguish."
At this point defense counsel objected "to any testimony with reference to plaintiff's suffering any varicocele * * * on the ground that there is no allegation in the petition to that effect." The testimony was admitted subject to the objection. Thereafter other evidence dealing with varicocele was introduced by both litigants, some of it going to show that such condition existed at the time the hernia operation was performed.
At the conclusion of the trial, plaintiff filed what is styled a supplemental and amended petition, averring:
"That in addition to the disabilities, pain, discomfort and harmful effects described in his original petition, he was by virtue of the accident described in said petition disabled and injured as follows:
"That by virtue of the sudden and severe strain set forth in said petition, there was produced a straining, rupturing, enlarging and distorting of the blood vessels, nerves, ligaments, tendons and other bodily tissues in the region of both right and left inguinal areas of petitioner's body, including a dilation of the veins of the testicles and spermatic cord of both sides, commonly known as varicocele.
"That the above set forth injuries and injurious results of said accident did, singly and in conjunction with the injurious results described in plaintiff's original petition, *Page 117 
render him totally and permanently disabled because of the pain, discomfort and disability produced thereby, to perform work of a reasonable character.
"Petitioner further avers in the alternative, in the event that it be held that he suffered from the above disabilities or injurious conditions prior to the accident, that said accident aggravated and enhanced said conditions so as to render plaintiff permanently and totally disabled to perform work of a reasonable character."
He prays for the relief asked in his original petition.
Defendant moved in writing that the amended petition be stricken from the record on the ground, among others, that it was in effect a suit on a separate and distinct injury from that originally sued upon. The court overruled the motion, ordered the case reopened for the purpose of hearing testimony on the matter presented in the amended petition, and granted defendant twenty days in which to make further appearance.
In an answer to the amended petition defendant pleaded a lack of six months' notice respecting the asserted varicocele, and, alternatively, the peremption of one and two years in bar of the claim. Also, therein, it denied plaintiff's allegations.
Evidence was then adduced under the amended pleadings, and the case submitted for decision.
The district court rendered judgment in defendant's favor, dismissing plaintiff's suit at his cost.
Plaintiff is prosecuting this appeal.
The evidence conclusively shows that the hernia operation performed on February 28, 1939, was highly successful and that plaintiff enjoyed a normal recovery therefrom. All of the medical experts agree on this. Furthermore, it may be said that no positive proof was made of the existence of an impingement of nerve fibers or of neuroma.
It does clearly appear, however, that at the time of the mentioned hernia operation and also when the case was tried plaintiff was experiencing what is known as a bilateral varicocele, being a varicose condition of the veins of the spermatic cord on both the right and left sides. This condition, contends plaintiff under his amended petition, is disabling and was either produced by the strain that caused the hernia or, if it previously existed, it was aggravated thereby.
There is evidence in the record tending to show that a strain sometimes, but not frequently, produces a varicocele. Usually, however, that condition is either congenital or it forms over a long period of time. Furthermore, according to the proof, it is not always painful.
The two physicians testifying for plaintiff express opinions that the bilateral varicocele, possessed by the employee when the hernia operation took place, was probably aggravated by the strain and caused the pain and disability of which complaint is made. They found no objective symptoms that could produce the claimed discomfort other than the varicocele.
The defense medical experts, on the other hand, are positive that no disability results from the found condition. These professional men attest that a majority of laboring men have varicocele, it developing over a period of months and years by reason of their being continuously on their feet; and that it is not ordinarily regarded as disabling or painful.
Counsel for plaintiff urges the application to this case of the well recognized rule that where the medical testimony is irreconcilably conflicting the court will look to the lay testimony and be governed thereby to a large extent. If it be conceded that a conflict of that character is here present and that the medical proof should be entirely disregarded, the lay testimony adduced, as we appreciate it, would afford little assistance to plaintiff. It establishes the fact that he worked continuously at his laborious mill duties from May 9, 1939, the date when he resumed his employment following the operation, up to January 18, 1940, or a period of more than eight months; and no complaint of pain or disability was made to his superiors until just prior to the discontinuance of that work.
Shortly before the last mentioned date he made the statement to the company's doctor that: "I want to quit. Old man Ferree is getting too hard to please and I want you to put me on social security. I want to ride it awhile and rest and then get another job." Two or three days thereafter he complained to that physician about his hernia trouble.
In deciding this controversy the trial judge undoubtedly concluded that the plaintiff had failed to prove his case with the required legal certainty and that an award *Page 118 
of compensation could not be made predicated on possibilities and probabilities. Such a conclusion in our opinion, considering the evidence in the record, is not manifestly erroneous.
It is unnecessary for us to discuss defendant's objection to the allowance of the amended petition and also its pleas of lack of notice and of peremption, in view of our announced holding on the merits.
The judgment is affirmed.
DREW and TALIAFERRO, JJ., concur.