This is a suit for compensation by plaintiff against his employer and its insurer, claiming permanent and total disability resulting from an accident while in the course of his employment. After trial there was judgment in favor of plaintiff from which defendants appeal.
The burden of plaintiff's petition is that on July 11, 1946, at about 4:15 P.M. while engaged in working as a "roughneck" for the Penrod Drilling Company on a well in the East Haynesville Field, Claiborne Parish, Louisiana, he sustained a traumatic varicocele, which injury has resulted in his permanent and total disability to perform physical work of any nature.
It is admitted that plaintiff is affected with varcocele but defendants deny both the accidental origin of this condition and the disability resulting therefrom.
At the time and on the date in question plaintiff was working on the drilling rig, his particular duty being to throw "slips", which are instruments intended to hold the casing while the pipe is being broken and connections made. The slip which he was handling at the time is described, in the testimony of the driller who was on duty, as a "Mission one man slip, a three piece slip". The weight of the slip was variously estimated by the witnesses as being in the neighborhood of 75 to 100 pounds.
Plaintiff alleged and testified that as he was handling the slip he felt a hot pain in his left side down in the groin which made him so sick that he "turned kind of blind" and felt like he "wanted to vomit". Despite this pain plaintiff finished the operation required of him during the making of the connection and then walked over behind the engine of the drilling rig and took down his pants to examine the site of the injury. He claims to have observed a red place on the skin and observed to a fellow employee "I believe I have ruptured myself". Plaintiff further testified that he went to a house where the crew was accustomed to change clothes, and, because he was in such pain, examined himself again, and found a knot as big as "the end of my thumb and kind of turned blue and black". He informed the driller, took down his pants, showed his alleged injury, and, at the suggestion of the driller, after some little delay, took the driller's car and drove, according to his testimony, to the hospital in Haynesville, where he was examined by Dr. Rivenbark.
In attempted substantiation of his testimony as to the facts surrounding his injury plaintiff introduced the testimony by deposition of the driller who was on duty at the time and presented as a witness one of his fellow employees. He further attempted to bolster his recital of the nature and character of the injury with the lay testimony of his wife and father-in-law. On behalf of plaintiff Dr. M.J. Rivenbark of Haynesville and Dr. E.A. Campbell of Homer testified as experts.
The witnesses on behalf of defendant were exclusively members of the medical profession, namely, Dr. L.G. Fincher of El Dorado, Arkansas, Drs. Tom J. Smith, J.R. Stamper, E.T. Hilton and W.S. Harmon of Shreveport.
The learned judge of the lower Court rendered a detailed opinion in which he set forth at length his reasons for judgment. *Page 537 
Because of the great weight which is properly accorded to opinions and judgments of trial Courts by appellate tribunals, we have taken great pains in giving extremely thorough consideration to the record in this case. After exhaustive study we are firm in the belief that our distinguished brother of the District Court permitted himself to be led into manifest error in his determination of this cause. It is evident from a reading of the learned Judge's opinion that he erred in basing his conclusions upon a considerable mass of the testimony of witnesses which he extricated and isolated from the substance and text of the background. Long and detailed extracts of testimony are set forth in the opinion, which, when taken by themselves, would unquestionably carry great weight in supporting the conclusion reached. But in our opinion when these testimonial extracts are relegated to the proper position in the whole fabric of the case as presented on trial they become of little importance and yield to the convincing factors which to our minds justify another and opposite conclusion.
[1] In the first place, we are convinced that plaintiff did not suffer any accident and in this statement we comprehend those several classifications which have been determined under our jurisprudence to constitute "accidents" within the meaning of the Workmen's Compensation Statute. Act No. 20 of 1914, as amended.
It is evident to us that plaintiff has failed to establish with any reasonable certainty by a preponderance of credible evidence the occurrence of an accident resulting in injury either directly and in itself, or through the exaggeration of an existing weakness, or in the giving way of affected parts of the body.
[2, 3] We think this fact is conclusively established by the testimony of defendant and the two witnesses who were members of the drilling crew at the time and who testified in his behalf. To begin with, the symptoms which plaintiff described at the time of the supposed "accident" are so exactly the symptoms evidenced by persons who claim to have suffered hernia that there can be no doubt as to the fact that plaintiff intended at the time to simulate an injury of this nature. Every Judge of every Court is familiar with the testimony of "burning", "stinging" pains, of violent nausea, either producing or threatening to produce immediate vomiting, of dizziness and a kind of blindness, which are the standard, classic, customary and almost unvarying symptoms of claimants alleging hernia as the result of injuries in the course and scope of employment.
If there were even the slightest doubt about this particular point it would be completely dissipated by the remark made by plaintiff at the time, according to his own testimony, to the effect that he believed he had ruptured himself.
And by way of making assurance doubly or trebly sure we are impressed by the testimony of plaintiff's fellow employee and the driller in charge of the rig, who stated positively that the only evidence of any injury which they observed at the time when they examined plaintiff's body, at his request, in the region where the alleged injury had occurred, was a red mark on the left side of the abdomen at a point several inches above the location of a varicocele. This, it must be observed, was the testimony of the witnesses referred to, in the very face of plaintiff's testimony that a knot in his groin immediately appeared, swelling and blue black in color. Had this indeed and in truth been the case we are convinced that plaintiff would have pointed out this particular visible evidence of the injury to his fellow workers at the time.
Unquestionably the red place on the left side of plaintiff's abdomen was due to the fact that plaintiff had himself rubbed his side at this point with his hand, a fact which was testified to by plaintiff's witness, Norris, the driller.
And, added to all these facts and circumstances, we find that despite his allegedly severe pain plaintiff within a few minutes drove off in the driller's car, ostensibly for the purpose of consulting a doctor in Haynesville. But, in truth, it appears that plaintiff did not consult the doctor until the following afternoon, almost 24 hours following *Page 538 
the purported accident and injury. We observe with some amazement the effort which the able Judge of the District Court has made in his written opinion to justify the conclusion that plaintiff went to Dr. Rivenbark immediately after the "accident". In doing this he has been forced to write out of consideration the positive testimony of Dr. Rivenbark himself which was based upon his office records. Even plaintiff's zealous counsel apparently do not insist upon this point since they state in brief before this Court that "Dr. Rivenbark examined the plaintiff within 24 hours after the accident." (Emphasis by the Court.)
Further than this we find no indications from the testimony that would support plaintiff's claims. While we have above discussed the positive factors we are scarcely less impressed by the omission of other circumstances, which, within all reason, should have been expected to have been manifested. It is difficult to believe that plaintiff, suffering as acute and severe pain as he would have the Court believe, made no outcry, continued his work for a few minutes until his immediate task was completed, and gave evidence by no outward physical appearance, insofar as is reflected by the testimony in the record, of the result of any accident, injury or suffering. He did not turn pale nor break out in sweat, nor did he manifest before the eyes of his co-workers any other outward evidence of discomfort, to say nothing of acute pain.
In our opinion it is not even necessary to resort to a reliance upon the vastly preponderating weight of the expert medical testimony to the effect that there is no such thing as a traumatic varicocele in reaching the conclusion that plaintiff did not suffer this character of injury.
We think the conclusion is unescapable, from the testimony of Dr. Fincher, that plaintiff had been suffering from a varicocele at least since 1943 when he was examined by Dr. Fincher. With reference to this fact, as is urged by plaintiff's counsel, the Court must determine whether plaintiff suffered an "accident" to the extent that this condition was aggravated or resulted in breaking down of the affected part of his body. On this point we think the great preponderance of the expert testimony is more than sufficient to serve as the basis for a negative conclusion.
The testimony of the medical witnesses indicates that from 25 to 50% of all men suffer from some form of varicocele, ranging in degree from small through moderate and medium to large, and that from 90 to 95% of all these varicoceles are located on the left spermatic cord. In the opinion of the majority of these witnesses, which opinion is ably supported by explanation in theory and observation in practice, a varicocele of such degree as to render a man totally disabled is exceedingly rare. And the great weight of the testimony of the doctors in this case, all of whom had made thorough examinations of plaintiff, is clear to the point that plaintiff was not suffering from a disabling varicocele and that he was able to perform hard manual labor.
The point is made and zealously urged that plaintiff at the time of trial was suffering some considerable pain and had been so suffering since the time of the "accident". On the basis of the familiar principle that the law does not require a man to work nor does it regard him as able to work, within the intent and purpose of the statute, at the cost of pain and suffering, it is contended that this plaintiff should be regarded as suffering from total disability because labor is painful.
In disposing of this issue we are fully cognizant of the fact that pain is purely subjective and that medical science has not yet devised a means whereby it may measure or determine the existence or degree of pain. And in this connection we are impressed with the testimony of Dr. Rivenbark, who was an able medical witness tendered by plaintiff, and who repeatedly indicated that his conclusions as to plaintiff's injury and ability to work were in a substantial degree predicated upon the history of the alleged "accident" and the subjective symptoms of pain and suffering as related to him by the plaintiff.
But again we do not find it necessary to resort to the expressions of opinion of the medical experts but prefer to base our conclusions primarily upon established facts. And, strangely enough, we are moved to *Page 539 
a resolution of this particular issue by a circumstance which, paradoxically, is urged in support of plaintiff's claim. It is argued on behalf of plaintiff that he actually did try to work and that on or about January 24, 1947, he went to work and worked for four days, at the end of which time he was forced to again quit work because of the pain and suffering that resulted from the physical exertion attendant upon his work. And, again, in support of plaintiff's testimony the witness, Norris, was looked to for substantiation. But Norris' testimony not only fails to substantiate but actually destroys plaintiff's version. Norris testified that during these four days plaintiff worked as hard, as ably and as willingly as had been his experience prior to the "accident" and made no complaint nor evidenced any discomfort or pain. Yet plaintiff would have the Court believe he suffered such severe pain that he had to quit the job, go to a doctor and get a hypodermic of morphine for relief. It is more than passing strange that plaintiff did not produce the doctor who had administered this hypodermic, and we can only regretfully conclude that his failure to secure this critically important testimony is attributable to the fact that the doctor in question would not have so testified.
Reference has been made in briefs of counsel for both parties and in the opinion of the District Judge to the only three cases in the jurisprudence of this State which involve claims under the Workmen's Compensation Law on the basis of varicoceles as constituting disability, namely, Perkins v. White Grandin Lbr. Co., 1931, 17 La. App. 47, 135 So. 275; Norris v. Crowell Spencer Lbr. Co. La. App. 1934, 157 So. 164; and Cunningham v. Louisiana Central Lbr. Co., La. App. 1942, 8 So.2d 115.
The above cases, in all of which the demands of the plaintiffs were rejected, were quite naturally cited with an evident feeling of assurance by diligent counsel for defendant. The attempt was made, again quite naturally, on the part of equally diligent and able counsel for plaintiff to distinguish and differentiate the applicability of the cited cases from the matter at hand, and the opinion of the District Judge evidences a considerable effort to disregard the findings in these cases as controlling of the issues tendered in the instant case.
We find upon close examination of the cases cited that they appear to be reliable and well reasoned authority on the basis of an analysis of expert testimony for the general proposition that varicoceles, or the aggravation thereof, are not the result of trauma nor are they disabling.
If in the case before us we had no basis for our position save and except a consideration of the medical testimony, we would feel that the preponderance of such testimony in this case would indicate a holding to the same effect as the cases cited supra. But, as we have been at some pains to set forth, we feel that the questions presented herein are susceptible of being definitely resolved by analysis of the testimony of plaintiff and his fellow employee witnesses. The pattern is so plain as to leave no question in our minds.
It matters not whether we pitch our conclusions upon either the lay testimony or the medical testimony, the same result is indicated. And since our appreciation of the testimony of the lay witnesses and of the medical experts leads to the same result, we cannot help but feel doubly certain as to the justice thereof.
For the reasons assigned the judgment appealed from is reversed and set aside, and there is now judgment in favor of defendants, rejecting plaintiff's demands at his cost.
KENNON, J., absent. *Page 540